INTERNATIONAL BROTHERHOOD OF TEAM-
STERS, LOCAL 695, A. F. L., ET AL.
*v.* VOGT, INC.

No. 79. Argued February 26, 1957.—Decided June 17, 1957.

*David Previant* argued the cause and filed a brief for petitioners.

*Leon B. Lamfrom* argued the cause for respondent. With him on the brief was *Jacob L. Bernheim.*

*J. Albert Woll* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

Mr. Justice Frankfurter delivered the opinion of the Court.

This is one more in the long series of cases in which this Court has been required to consider the limits imposed by the Fourteenth Amendment on the power of a State to enjoin picketing. The case was heard below on the pleadings and affidavits, the parties stipulating that the record contained "all of the facts and evidence that would be adduced upon a trial on the merits . . . ." Respondent owns and operates a gravel pit in Oconomowoc, Wisconsin, where it employs 15 to 20 men. Petitioner unions sought unsuccessfully to induce some of respondent's employees to join the unions and commenced to picket the entrance to respondent's place of business with signs reading, "The men on this job are not 100% affiliated with the A. F. L." "In consequence," drivers of several trucking companies refused to deliver and haul goods to and from respondent's plant, causing substantial damage to respondent. Respondent thereupon sought an injunction to restrain the picketing.

The trial court did not make the finding, requested by respondent, "That the picketing of plaintiff's premises has been engaged in for the purpose of coercing, intimidating and inducing the employer to force, compel, or induce its employees to become members of defendant labor organizations, and for the purpose of injuring the plaintiff in its

business because of its refusal to in any way interfere with the rights of its employees to join or not to join a labor organization." It nevertheless held that by virtue of Wis. Stat. § 103.535, prohibiting picketing in the absence of a "labor dispute," the petitioners must be enjoined from maintaining any pickets near respondent's place of business, from displaying at any place near respondent's place of business signs indicating that there was a labor dispute between respondent and its employees or between respondent and any of the petitioners, and from inducing others to decline to transport goods to and from respondent's business establishment.

On appeal, the Wisconsin Supreme Court at first reversed, relying largely on *A. F. of L.* v. *Swing*, 312 U. S. 321, to hold § 103.535 unconstitutional, on the ground that picketing could not constitutionally be enjoined merely because of the absence of a "labor dispute." 270 Wis. 315, 71 N. W. 2d 359.

Upon reargument, however, the court withdrew its original opinion. Although the trial court had refused to make the finding requested by respondent, the Supreme Court, noting that the facts as to which the request was made were undisputed, drew the inference from the undisputed facts and itself made the finding. It canvassed the whole circumstances surrounding the picketing and held that "One would be credulous, indeed, to believe under the circumstances that the union had no thought of coercing the employer to interfere with its employees in their right to join or refuse to join the defendant union." Such picketing, the court held, was for "an unlawful purpose," since Wis. Stat. § 111.06 (2)(b) made it an unfair labor practice for an employee individually or in concert with others to "coerce, intimidate or induce any employer to interfere with any of his employes in the enjoyment of their legal rights . . . or to engage in any practice with regard to his employes which would

constitute an unfair labor practice if undertaken by him on his own initiative." Relying on *Building Service Employees* v. *Gazzam,* 339 U. S. 532, and *Pappas* v. *Stacey,* 151 Me. 36, 116 A. 2d 497, the Wisconsin Supreme Court therefore affirmed the granting of the injunction on this different ground. 270 Wis. 321a, 74 N. W. 2d 749.

We are asked to reverse the judgment of the Wisconsin Supreme Court, which to a large extent rested its decision on that of the Supreme Judicial Court of Maine in *Pappas* v. *Stacey, supra.* When an appeal from that decision was filed here, this Court granted appellee's motion to dismiss for lack of a substantial federal question. 350 U. S. 870. Since the present case presents a similar question, we might well have denied certiorari on the strength of our decision in that case. In view of the recurrence of the question, we thought it advisable to grant certiorari, 352 U. S. 817, and to restate the principles governing this type of case.

It is inherent in the concept embodied in the Due Process Clause that its scope be determined by a "gradual process of judicial inclusion and exclusion," *Davidson* v. *New Orleans,* 96 U. S. 97, 104. Inevitably, therefore, the doctrine of a particular case "is not allowed to end with its enunciation and . . . an expression in an opinion yields later to the impact of facts unforeseen." *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609, 619 (Brandeis, J., dissenting). It is not too surprising that the response of States—legislative and judicial—to use of the injunction in labor controversies should have given rise to a series of adjudications in this Court relating to the limitations on state action contained in the provisions of the Due Process Clause of the Fourteenth Amendment. It is also not too surprising that examination of these adjudications should disclose an evolving, not a static, course of decision.

The series begins with *Truax* v. *Corrigan,* 257 U. S. 312, in which a closely divided Court found it to be viola-

tive of the Equal Protection Clause—not of the Due Process Clause—for a State to deny use of the injunction in the special class of cases arising out of labor conflicts. The considerations that underlay that case soon had to yield, through legislation and later through litigation, to the persuasiveness of undermining facts. Thus, to remedy the abusive use of the injunction in the federal courts (see Frankfurter and Greene, The Labor Injunction), the Norris-LaGuardia Act, 47 Stat. 70, 29 U. S. C. § 101, withdrew, subject to qualifications, jurisdiction from the federal courts to issue injunctions in labor disputes to prohibit certain acts. Its example was widely followed by state enactments.

Apart from remedying the abuses of the injunction in this general type of litigation, legislatures and courts began to find in one of the aims of picketing an aspect of communication. This view came to the fore in *Senn* v. *Tile Layers Union,* 301 U. S. 468, where the Court held that the Fourteenth Amendment did not prohibit Wisconsin from authorizing peaceful stranger picketing by a union that was attempting to unionize a shop and to induce an employer to refrain from working in his business as a laborer.

Although the Court had been closely divided in the *Senn* case, three years later, in passing on a restrictive instead of a permissive state statute, the Court made sweeping pronouncements about the right to picket in holding unconstitutional a statute that had been applied to ban all picketing, with "no exceptions based upon either the number of persons engaged in the proscribed activity, the peaceful character of their demeanor, the nature of their dispute with an employer, or the restrained character and the accurateness of the terminology used in notifying the public of the facts of the dispute." *Thornhill* v. *Alabama,* 310 U. S. 88, 99. As the statute dealt at large with all picketing, so the Court broadly

assimilated peaceful picketing in general to freedom of speech, and as such protected against abridgment by the Fourteenth Amendment.

These principles were applied by the Court in *A. F. of L. v. Swing,* 312 U. S. 321, to hold unconstitutional an injunction against peaceful picketing, based on a State's common-law policy against picketing when there was no immediate dispute between employer and employee. On the same day, however, the Court upheld a generalized injunction against picketing where there had been violence because "it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful." *Milk Wagon Drivers Union* v. *Meadowmoor Dairies,* 312 U. S. 287, 294.

Soon, however, the Court came to realize that the broad pronouncements, but not the specific holding, of *Thornhill* had to yield "to the impact of facts unforeseen," or at least not sufficiently appreciated. Cf. *People* v. *Schweinler Press,* 214 N. Y. 395, 108 N. E. 639, 28 Harv. L. Rev. 790. Cases reached the Court in which a State had designed a remedy to meet a specific situation or to accomplish a particular social policy. These cases made manifest that picketing, even though "peaceful," involved more than just communication of ideas and could not be immune from all state regulation. "Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated." *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769, 776 (concurring opinion); see *Carpenters Union* v. *Ritter's Cafe,* 315 U. S. 722, 725–728.

These latter two cases required the Court to review a choice made by two States between the competing interests of unions, employers, their employees, and the

290

public at large. In the *Ritter's Cafe* case, Texas had enjoined as a violation of its antitrust law picketing of a restaurant by unions to bring pressure on its owner with respect to the use of nonunion labor by a contractor of the restaurant owner in the construction of a building having nothing to do with the restaurant. The Court held that Texas could, consistent with the Fourteenth Amendment, insulate from the dispute a neutral establishment that industrially had no connection with it. This type of picketing certainly involved little, if any, "communication."

In *Bakery Drivers Local* v. *Wohl*, 315 U. S. 769, in a very narrowly restricted decision, the Court held that because of the impossibility of otherwise publicizing a legitimate grievance and because of the slight effect on "strangers" to the dispute, a State could not constitutionally prohibit a union from picketing bakeries in its efforts to have independent peddlers, buying from bakers and selling to small stores, conform to certain union' requests. Although the Court in *Ritter's Cafe* and *Wohl* did not question the holding of *Thornhill*, the strong reliance on the particular facts in each case demonstrated a growing awareness that these cases involved not so much questions of free speech as review of the balance struck by a State between picketing that involved more than "publicity" and competing interests of state policy. (See also *Cafeteria Union* v. *Angelos*, 320 U. S. 293, where the Court reviewed a New York injunction against picketing by a union of a restaurant that was run by the owners without employees. The New York court appeared to have justified an injunction on the alternate grounds that there was no "labor dispute" under the New York statute or that use of untruthful placards justified the injunction. We held, in a brief opinion, that the abuses alleged

did not justify an injunction against all picketing and that *A. F. of L.* v. *Swing* governed the alternate ground for decision.)

The implied reassessments of the broad language of the *Thornhill* case were finally generalized in a series of cases sustaining injunctions against peaceful picketing, even when arising in the course of a labor controversy, when such picketing was counter to valid state policy in a domain open to state regulation. The decisive reconsideration came in *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490. A union, seeking to organize peddlers, picketed a wholesale dealer to induce it to refrain from selling to nonunion peddlers. The state courts, finding that such an agreement would constitute a conspiracy in restraint of trade in violation of the state antitrust laws, enjoined the picketing. This Court affirmed unanimously.

> "It is contended that the injunction against picketing adjacent to Empire's place of business is an unconstitutional abridgment of free speech because the picketers were attempting peacefully to publicize truthful facts about a labor dispute. . . . But the record here does not permit this publicizing to be treated in isolation. For according to the pleadings, the evidence, the findings, and the argument of the appellants, the sole immediate object of the publicizing adjacent to the premises of Empire, as well as the other activities of the appellants and their allies, was to compel Empire to agree to stop selling ice to nonunion peddlers. Thus all of appellants' activities . . . constituted a single and integrated course of conduct, which was in violation of Missouri's valid law. In this situation, the injunction did no more than enjoin an offense against Missouri law, a felony." *Id.*, at 497–498.

The Court therefore concluded that it was "clear that appellants were doing more than exercising a right of free speech or press. . . . They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade." *Id.*, at 503.

The following Term, the Court decided a group of cases applying and elaborating on the theory of *Giboney.* In *Hughes* v. *Superior Court*, 339 U. S. 460, the Court held that the Fourteenth Amendment did not bar use of the injunction to prohibit picketing of a place of business solely to secure compliance with a demand that its employees be hired in percentage to the racial origin of its customers. "We cannot construe the Due Process Clause as precluding California from securing respect for its policy against involuntary employment on racial lines by prohibiting systematic picketing that would subvert such policy." *Id.*, at 466. The Court also found it immaterial that the state policy had been expressed by the judiciary rather than by the legislature.

On the same day, the Court decided *Teamsters Union* v. *Hanke*, 339 U. S. 470, holding that a State was not restrained by the Fourteenth Amendment from enjoining picketing of a business, conducted by the owner himself without employees, in order to secure compliance with a demand to become a union shop. Although there was no one opinion for the Court, its decision was another instance of the affirmance of an injunction against picketing because directed against a valid public policy of the State.

A third case, *Building Service Employees* v. *Gazzam*, 339 U. S. 532, was decided the same day. Following an unsuccessful attempt at unionization of a small hotel and refusal by the owner to sign a contract with the union as bargaining agent, the union began to picket the hotel with signs stating that the owner was unfair to organized

labor. The State, finding that the object of the picketing was in violation of its statutory policy against employer coercion of employees' choice of bargaining representative, enjoined picketing for such purpose. This Court affirmed, rejecting the argument that "the *Swing* case, *supra,* is controlling. . . . In that case this Court struck down the State's restraint of picketing based solely on the absence of an employer-employee relationship. An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees' selection of a bargaining representative. Peaceful picketing for any lawful purpose is not prohibited by the decree under review." *Id.,* at 539.

A similar problem was involved in *Plumbers Union* v. *Graham,* 345 U. S. 192, where a state court had enjoined, as a violation of its "Right to Work" law, picketing that advertised that nonunion men were being employed on a building job. This Court found that there was evidence in the record supporting a conclusion that a substantial purpose of the picketing was to put pressure on the general contractor to eliminate nonunion men from the job and, on the reasoning of the cases that we have just discussed, held that the injunction was not in conflict with the Fourteenth Amendment.

This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy.

In the light of this background, the Maine Supreme Judicial Court in 1955 decided, on an agreed statement of facts, the case of *Pappas* v. *Stacey,* 151 Me. 36, 116 A. 2d 497. From the statement, it appeared that three union employees went on strike and picketed a restaurant peacefully "for the sole purpose of seeking to organize other

employees of the Plaintiff, ultimately to have the Plaintiff enter into collective bargaining and negotiations with the Union . . . ." Maine had a statute providing that workers should have full liberty of self-organization, free from restraint by employers or other persons. The Maine Supreme Judicial Court drew the inference from the agreed statement of facts that "there is a steady and exacting pressure upon the employer to interfere with the free choice of the employees in the matter of organization. To say that the picketing is not designed to bring about such action is to forget an obvious purpose of picketing—to cause economic loss to the business during noncompliance by the employees with the request of the union." 151 Me., at 42, 116 A. 2d, at 500. It therefore enjoined the picketing, and an appeal was taken to this Court.

The whole series of cases discussed above allowing, as they did, wide discretion to a State in the formulation of domestic policy, and not involving a curtailment of free speech in its obvious and accepted scope, led this Court, without the need of further argument, to grant appellee's motion to dismiss the appeal in that it no longer presented a substantial federal question. 350 U. S. 870.

The *Stacey* case is this case. As in *Stacey,* the present case was tried without oral testimony. As in *Stacey,* the highest state court drew the inference from the facts that the picketing was to coerce the employer to put pressure on his employees to join the union, in violation of the declared policy of the State. (For a declaration of similar congressional policy, see § 8 of the National Labor Relations Act, 61 Stat. 140, 29 U. S. C. § 158.) The cases discussed above all hold that, consistent with the Fourteenth Amendment, a State may enjoin such conduct.

Of course, the mere fact that there is "picketing" does not automatically justify its restraint without an investigation into its conduct and purposes. State courts, no

more than state legislatures, can enact blanket prohibitions against picketing. *Thornhill* v. *Alabama* and *A. F. of L.* v. *Swing, supra.* The series of cases following *Thornhill* and *Swing* demonstrate that the policy of Wisconsin enforced by the prohibition of this picketing is a valid one. In this case, the circumstances set forth in the opinion of the Wisconsin Supreme Court afford a rational basis for the inference it drew concerning the purpose of the picketing. No question was raised here concerning the breadth of the injunction, but of course its terms must be read in the light of the opinion of the Wisconsin Supreme Court, which justified it on the ground that the picketing was for the purpose of coercing the employer to coerce his employees. "If astuteness may discover argumentative excess in the scope of the [injunction] beyond what we constitutionally justify by this opinion, it will be open to petitioners to raise the matter, which they have not raised here, when the [case] on remand [reaches] the [Wisconsin] court." *Teamsters Union* v. *Hanke,* 339 U. S., at 480–481.

Therefore, having deemed it appropriate to elaborate on the issues in the case, we affirm.

*Affirmed.*

Mr. Justice Whittaker took no part in the consideration or decision of this case.

Mr. Justice Douglas, with whom The Chief Justice and Mr. Justice Black concur, dissenting.

The Court has now come full circle. In *Thornhill* v. *Alabama,* 310 U. S. 88, 102, we struck down a state ban on picketing on the ground that "the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution." Less than one year later, we held that the First Amendment protected organi-

zational picketing on a factual record which cannot be distinguished from the one now before us. *A. F. of L.* v. *Swing,* 312 U. S. 321. Of course, we have always recognized that picketing has aspects which make it more than speech. *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769, 776–777 (concurring opinion). That difference underlies our decision in *Giboney* v. *Empire Storage & Ice Co.,* 336 U. S. 490. There, picketing was an essential part of "a single and integrated course of conduct, which was in violation of Missouri's valid law." *Id.,* at 498. And see *Labor Board* v. *Virginia Power Co.,* 314 U. S. 469, 477–478. We emphasized that "there was clear danger, imminent and immediate, that unless restrained, appellants would succeed in making [the state] policy a dead letter . . . ." 336 U. S., at 503. Speech there was enjoined because it was an inseparable part of conduct which the State constitutionally could and did regulate.

But where, as here, there is no rioting, no mass picketing, no violence, no disorder, no fisticuffs, no coercion—indeed nothing but speech—the principles announced in *Thornhill* and *Swing* should give the advocacy of one side of a dispute First Amendment protection.

The retreat began when, in *Teamsters Union* v. *Hanke,* 339 U. S. 470, four members of the Court announced that all picketing could be prohibited if a state court decided that that picketing violated the State's public policy. The retreat became a rout in *Plumbers Union* v. *Graham,* 345 U. S. 192. It was only the "purpose" of the picketing which was relevant. The state court's characterization of the picketers' "purpose" had been made well-nigh conclusive. Considerations of the proximity of picketing to conduct which the State could control or prevent were abandoned, and no longer was it necessary for the state court's decree to be narrowly drawn to prescribe a specific evil. *Id.,* at 201–205 (dissenting opinion).

Today, the Court signs the formal surrender. State courts and state legislatures cannot fashion blanket prohibitions on all picketing. But, for practical purposes, the situation now is as it was when *Senn* v. *Tile Layers Union,* 301 U. S. 468, was decided. State courts and state legislatures are free to decide whether to permit or suppress any particular picket line for any reason other than a blanket policy against all picketing. I would adhere to the principle announced in *Thornhill.* I would adhere to the result reached in *Swing.* I would return to the test enunciated in *Giboney*—that this form of expression can be regulated or prohibited only to the extent that it forms an essential part of a course of conduct which the State can regulate or prohibit. I would reverse the judgment below.