**Dupuy H. ANDERSON and Acie J. Belton, Complainants,**

v.

**Wade O. MARTIN, Jr., Defendant.**

Civ. A. No. 2623.

United States District Court
D. Louisiana.

June 29, 1962.

Wisdom, Circuit Judge, dissented.

Johnnie A. Jones, Murphy W. Bell, Bruce A. Bell, Leonard P. Avery, Samuel Dickens, Baton Rouge, La., Wilmon L. Richardson, Pascagoula, Miss., Jack Greenberg, James M. Nabrit, III, New York City, Michael Meltsner, New York City, of counsel, for complainants.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Carroll Buck, First Asst. Atty. Gen., Harry Fuller, Second Asst. Atty. Gen., Teddy W. Airhart, Jr., Asst. Atty. Gen., Thomas W. McFerrin, Special Counsel, for defendant.

Before WISDOM, Circuit Judge, and WEST and ELLIS, District Judges.

WEST, District Judge.

In 1960 the Louisiana Legislature enacted legislation requiring the Secretary of State to place a racial designation over the name of every candidate on the ballot in the primary or general election.[1] Under the statute the candidate must place his name and racial designation on his certificate of candidacy and the Secretary of State uses that information in preparing the ballot. The designation applies to all candidates. The Statute requires that the designation of "Caucasian", "Negro", or "other specified race" be placed on the ballot after the name of each candidate.

Plaintiffs are two Negro candidates for the school board in East Baton Rouge Parish, State of Louisiana. They challenge the constitutionality of this statute under the First, Fourteenth and Fifteenth Amendments to the United States Constitution and request injunctive relief against the Secretary of State prior to the July 28, 1962, Democratic primary.

The District Judge denied a temporary restraining order and thereafter a three-judge court was convened pursuant to 28 U.S.C.A. § 2284. Defendant filed his answer together with a motion to dismiss for lack of jurisdiction in court on the day of the hearing. The court recessed to consider its jurisdiction and having concluded that it had jurisdiction,[2] the court reconvened to hear the merits. The parties stipulated that the facts were as stated in plaintiffs' complaint; the case proceeded to argument, and was submitted.

At the outset it is important to grasp the fundamental relationships of the parties. Plaintiffs are candidates for office and the rights they advance arise out of that status. Secondly, the statute in

---

1. LSA–R.S. Sec. 18:1174.1, Act 538 of 1960.

"Sec. 1174.1 Designation of race of candidates on paper and ballots—A. Every application for or notification or declaration of candidacy, and every certificate of nomination and every nomination paper filed in any state or local primary, general or special election for any elective office in this state shall show for each candidate named therein whether such candidate is of the Caucasian race, the Negro race or other specified race.

"B. Chairmen of party committees, party executive committees, presidents of boards of supervisors of election or any person or persons required by law to certify to the Secretary of State the names of candidates to be placed on the ballots shall cause to be shown in such certification whether each candidate named therein is of the Caucasian race, Negro race or other specified race, which information shall be obtained from the applications for or notifications or declarations of candidacy or from the certificates of nomination or nomination papers, as the case may be.

"C. On the ballots to be used in any state or local primary, general or special election the Secretary of State shall cause to be printed within parentheses ( ) beside the name of each candidate, the race of the candidate, whether Caucasian, Negro, or other specified race, which information shall be obtained from the documents described in Subsection A or B of this Section. The racial designation on the ballots shall be in print of the same size as the print in the names of the candidates on the ballots."

2. Jurisdiction is properly invoked under 28 U.S.C.A. §§ 1331, 1343(3), and 42 U.S.C.A. §§ 1971(a), 1981, 1983.

question is a state statute and applies to all. While it requires the Negro to have his race disclosed on the ballot, it requires the same of the Caucasian, Mongolian, and so on. The garden variety discrimination between white and Negro is not involved. Moreover, the state adopts no "sophisticated" method of discrimination that might give us pause.[3] The sole question is whether the constitutional rights of a Negro candidate are abridged when his race, like that of all other candidates, is disclosed on the ballot pursuant to state statute.

Precisely which constitutional rights plaintiffs advance is somewhat difficult to determine. Certainly the Fifteenth Amendment gives plaintiffs no comfort. While the Fourteenth Amendment apparently protects rights broader than those originally conceived by its drafters due to the Equal Protection and Due Process clauses,[4] the Fifteenth Amendment is direct in its protection.[5] It is exclusively the right to vote, and nothing more, which, in terms, is protected. Surely the statute must be interpreted in such a way as to protect the fundamental power of the franchise in whatever context a State bent on discrimination seeks to cast it.[6] But at no time has the Supreme Court expanded the protection of the amendment beyond the franchise.

Even with the recognition that the Fifteenth Amendment created affirmative rights,[7] the court has not gone beyond the protection of the voter per se. Likewise, McDonald v. Key,[8] which is urged on us as controlling, recognized that the right to vote is not involved in a statute requiring racial designations on the ballot. Moreover the facts of the case do not suggest a restriction on voting rights. The unfathomable vagaries of the voter operate just as freely with this statute as without it. This statute merely contributes to a more informed electorate. In any event, plaintiffs do not validly assert a right under the Fifteenth Amendment.

■ There is a creeping tendency, when dealing with problems in the area of the First and Fourteenth Amendments,[9] to outlaw State statutes on the grounds of their lack of rightness or wisdom, while under the misapprehension that only their constitutionality is being tested. This the Supreme Court has told us, more than once, we may not do.[10] With due respect for our federalism, the court must examine the Constitution and the various lines of Supreme Court decisions and determine if the State action contravenes the Constitution. The examination must be liberal so as not to exalt form over substance;

3. See Lane v. Wilson, 307 U.S. 268, 59 S. Ct. 872, 83 L.Ed. 1281.

4. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884.

5. U.S.Constitution Amend., XV.
  "Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or any State on account of race, color, or previous condition of servitude."

6. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368.

7. Ex parte Yarborough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L. Ed. 1340.

8. 224 F.2d 608 (10 Cir. 1955).

9. So that the matter may not confuse the issue let it be noted that the First Amendment is wholly inapplicable to this case dealing as it does with the powers of Congress. It is the rights enumerated in the First Amendment which are included within the Fourteenth Amendment upon which plaintiff relies. Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L. Ed. 1138.

10. Carpenters and Joiners Union, etc. v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; International Brotherhood of Teamsters, etc., Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Building Service Employees, etc. v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L. Ed. 1045.

it must be circumspect so as to accord the states their just powers.[11]

■ Plaintiffs' reliance on the Fourteenth Amendment suggests two lines of Supreme Court cases which might control this action. The first of these is the right to anonymity defined in N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S. Ct. 1163, 2 L.Ed.2d 1488. This case, plus Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480, and Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L. Ed.2d 559, expounded the proposition that a person exercising freedom of speech or association had a right to anonymity if disclosure entailed "the likelihood of a substantial restraint upon the exercise * * * of their right to freedom of association."[12] Justice Black in Talley v. California, supra at 65, 80 S.Ct. at 539, explained that "the reason for these holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance."

It may be assumed, for present purposes, that plaintiffs have a constitutional right to seek office.[13] However, no matter what the length and breadth of that right, there is no basis for saying that a candidate for office has a right to anonymity. The Court in N. A. A. C. P. v. Alabama, was of the opinion that the injury to a right subsequent to disclosure of identity precludes the right to identification. A political candidate does not lose his right to run for office by disclosure of his race. Further, it is safe to say that his race, like his name and political affiliation which also appear on the ballot[14], will come out in the campaign.

This court is not disposed to create a shield against the brightest light of public examination of candidates for public office.

The Court in Bates, N. A. A. C. P. v. Alabama, and Talley, recognized that the right to anonymity could be abridged in certain instances. However, in those instances, the State bore the burden of showing an overriding interest in the public sufficient to justify the partial abridgement of the right.[15] In the case before us the right of anonymity on the ballot does not exist so far as this court can determine. Thus this court is not put to any balancing since no personal interests are placed in the scale opposite the State interest, whatever it may be. We conclude that the Louisiana statute does not violate the Fourteenth Amendment on that score.

The second line of cases which appears applicable are the "state action" cases having their matrix in Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, and Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586. It is insufficient to state that these cases are distinguishable because state action is clear in this case. These cases must be read for their meaning as well as their facts.

The first case is, of course, McDonald v. Key, supra. While it does not fall precisely within the "state action" concept, it is the case closest on its facts and involves the equal protection clause. There the Tenth Circuit found that the requirement that only Negroes have their race designated on the ballot violated the Fourteenth Amendment. Plaintiffs at-

11. "To maintain the balance of our federal system, insofar as it is committed to our care, demands at once zealous regard for the guarantees of the Bill of Rights and due recognition of the powers belonging to the states. Such an adjustment requires austere judgment, and a precise summary of the result may help to avoid misconstruction." Milk Wagon Drivers, etc. v. Meadowmoor, 312 U.S. 287, 297, 61 S.Ct. 552, 85 L.Ed. 836.

12. N. A. A. C. P. v. Alabama, supra, 357 U.S. at 462, 78 S.Ct. at 1172.

13. See McDonald v. Key, 10 Cir., 224 F.2d 608.

14. LSA–R.S. 18:671.

15. See also International Brotherhood of Teamsters, etc., Union v. Hanke, 339 U.S. 470, 474, 70 S.Ct. 773, 94 L.Ed. 995; International Brotherhood of Teamsters, etc. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347.

tempt to make more of this case than is in it. The Tenth Circuit did not require any intricate theory of constitutional deprivation to strike down the Oklahoma Statute. Negro candidates were treated different from all other candidates without good reason being shown. Given those facts the Court need not have gone further, and it did not. This is not the case before us. Here all candidates must state their race and have it printed on the ballot. Plaintiffs must look further to find unconstitutionality.

Plaintiffs would have us find in Shelley v. Kraemer and its progeny some principle which would deter a state from placing racial classifications on the ballot. A brief synopsis of the principle of these cases is in order. The Supreme Court, in the first instance, recognized that discrimination by private individuals was beyond the scope of the Fourteenth Amendment under the Civil Rights Cases.[16] To this was added the undeniable proposition that discrimination by the states was improper under the Fourteenth Amendment. Further the Court held that ostensibly private discrimination which was in fact enforced by the state was discriminatory "state action" under the Fourteenth Amendment.[17] The crucial fact in all

these cases, insofar as the instant case is concerned, is that there existed a prior or act of actually proven discrimination to which the state was privy. Either the private individual was seeking to exclude Negroes from a neighborhood,[18] or denying Negroes the right to vote,[19] or segregating buses,[20] train terminals,[21] restaurants,[22] or golf courses.[23] In those cases the state sought either to enforce the discrimination [24] or permit it within the public domain [25]. Since the Louisiana statute does not discriminate on its face, the Court must ask where the proven discrimination lies. Plaintiffs offer no proof of actual discrimination against them.[26] They ask the court to take notice that discrimination among the electorate will somehow occur as a result of this statute.[27] Precisely how this discrimination against plaintiffs can be discovered is not made clear, much less how the state controls the discrimination through this statute. Nothing that we can find in the state action cases suggest that a court may take a state statute, and gaze into the future, seeking some gossamer possibility of discrimination in a group of individuals wholly beyond the control of the state. The discrimination must be real and the state must effect it. On this record we find a nondiscriminatory statute and nothing more. Judicial

16. 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, See Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161.

17. Shelley v. Kraemer, supra; Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45.

18. Shelley v. Kraemer, supra; Barrows v. Jackson, supra.

19. Terry v. Adams, supra.

20. Boman v. Birmingham Transit Company, 5 Cir., 280 F.2d 531.

21. Baldwin v. Morgan, 5 Cir., 287 F.2d 750.

22. Burton v. Wilmington Parking Authority, supra.

23. Hampton v. City of Jacksonville, 5 Cir., 304 F.2d 320.

24. Shelley v. Kraemer, supra; Boman v. Birmingham Transit Co., supra.

25. Burton v. Wilmington Parking Authority, supra.

26. A classification in a statute having some reasonable basis does not offend against the equal protection clause of the Constitution even though in practice results in some inequality. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485.

27. Plaintiffs' reliance on Hall v. St. Helena Parish School Board, E.D.La., 197 F. Supp. 649, is unavailing since in that case the court was able to determine purpose from concrete results, or at the very least easily predictable consequences. Plaintiffs do not refer this court to any resulting discrimination and do not even hint at predictable results.

notice of a state policy of segregation avails us nothing unless actual discrimination is proven as a result of that policy through the medium of this statute. We have previously found that the state treats all candidates alike.

For the foregoing reasons we conclude that the statute is not in violation of the Fourteenth Amendment, and the request for preliminary injunction is denied.

WISDOM, Circuit Judge (dissenting).

In the eyes of the Constitution, a man is a man. He is not a white man. He is not an Indian. He is not a Negro.

If private persons identify a candidate for public office as a Negro, they have a right to do so. But it is no part of the business of the State to put a racial stamp on the ballot. It is too close to a religious stamp. It has no reasonable relation to the electoral processes.

When courts have struck down statutes and ordinances requiring separate seating arrangements in buses, separate restrooms, and separate restaurants in state-owned or operated airports and bus terminals, it was not because the evidence showed that negroes were restricted to uncomfortable seats in buses, dirty restrooms, and poor food. It was because they sat in buses behind a sign marked "colored", entered restrooms under the sign "colored", and could be served food only in restaurants for "colored". It is the stamp of classification by race that makes the classification invidious.

On principle, the case before us cannot be distinguished from McDonald v. Key, 10 Cir., 1955, 224 F.2d 608, cert. den'd, 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787. In that case the court had before it an Oklahoma statute requiring that any "candidate who is other than of the White race, shall have his race designated upon the ballots in parenthesis after his name." Under the Oklahoma constitution, the phrase "white race" includes not only members of that race, but members of all other races except the Negro race. The court held that this resulted in a denial of equality of treatment with respect to Negroes who run for office.

As a practical matter, in Oklahoma the omission of any racial designation on the ballot amounted to the candidate identifying himself as a white man just as surely as a negro candidate would identify himself by the word "negro" after his name. The result was essentially the same result intended to be accomplished by the Louisiana statute. Act 538 of 1960 is somewhat more sophisticated in that there is superficial appearance of equality of treatment. The effect is the same in that candidates are classified by race, and the State is using the elective processes to furnish information and stimulus for racial discrimination in the voting booth.

The State's imprimatur on racial distinctions on the ballot is no more valid than the State's imprimatur on separate voting booths. In Anderson v. Courson, 1962, 203 F.Supp. 806, 813, the District Court for the Middle District of Georgia held that maintenance of racially segregated voting places deprived Negroes of equal protection of the law "in the matter of the exercise of the elective franchise, a function and prerogative of utmost importance in the process of government, and so intrinsically characteristic of the dignity of citizenship".

Considering the extent of media of information today, it is highly unlikely that any voters will be confused by lack of racial identification of candidates on the ballot. Considering the number of parishes having a large Negro population, it is entirely likely that a racial stamp will help as much as it will hinder Negro candidates for public office in Louisiana. The vice in the law is not dependent on injury to Negroes. The vice in the law is the State's placing its power and prestige behind a policy of racial classification inconsistent with the elective processes. Justice Harlan put his finger on it many years ago when he said that the "Constitution is color-blind". If there is one area above all others where the Constitution is color-blind, it is the area of state action with respect to the ballot and the voting booth.

I respectfully dissent.