Hugh E. SPERRY, Regional Director of the Seventeenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LAWRENCE TYPOGRAPHICAL UNION NO. 570 Affiliated with the International Typographical Union AFL–CIO, Respondent.

No. KC–2195.

United States District Court
D. Kansas.

Dec. 31, 1964.

Thomas C. Hendrix and Vincent M. Helm, Kansas City, Mo., for petitioner.

Fred Cross, Kansas City, Kan., (Cohen, Schnider, Shamberg & Jenkins), Kansas City, Kan., Stanley D. Rostov, Kansas City, Mo., Gerhard P. Van Arkel and George Kaufman (Van Arkel & Kaiser), Washington, D. C., for respondent.

ARTHUR J. STANLEY, Jr., Chief Judge.

On August 11, 1964, Kansas Color Press, Inc. (Employer), pursuant to the

provisions of the National Labor Relations Act, as amended, (29 U.S.C.A. § 141 et seq.) filed a charge with the National Labor Relations Board (Board) alleging that Lawrence Typographical Union No. 570 (Union) had engaged in, and was engaging in, unfair labor practices within the meaning of § 8(b)(7)(B) of the Act (29 U.S.C.A. § 158(b)(7)(B)). The charge was referred to the Regional Director of the Seventeenth Region of the Board, Hugh E. Sperry (Petitioner).

This cause came on to be heard upon the verified petition of petitioner, alleging that the petitioner had reasonable cause to believe that the Union was violating § 8(b)(7)(B) of the Act and praying for a temporary injunction pursuant to § 10(*l*) of the Act. An order to show cause was issued and the Union answered. A hearing was had on September 18, 1964, and the court has fully considered the pleadings, evidence, arguments and briefs of counsel.

I. *Facts Involved.* There is no substantial disagreement as to any fact necessary to this decision. The basic facts are presented to the court by way of Joint Exhibits 1–21 which include a synopsis of, and the key documents in, the proceedings before the Board.

The Union is a labor organization. The Employer is engaged in the manufacture and distribution of printed material. In the operation of its business, the Employer annually receives goods and material from outside the state of Kansas valued in excess of $50,-000, and annually ships products outside the state of Kansas valued in excess of $50,000. The alleged unfair labor practice in question occurred at Lawrence, in the District of Kansas.

Prior to May 31, 1961, Employer recognized the Union as the collective bargaining representative of certain of its employees and had entered into a collective bargaining contract with the Union which expired on May 31. Negotiations on the terms of a new contract began

prior to May 31, but on September 19, 1961, while negotiations were in progress, the employees struck and began to picket in support of their position. The striking employees gradually were replaced. Subsequently, but prior to August 28, 1963, the Employer declined to bargain further. On that date, pursuant to representation petitions filed by two employees, an election was held in which the Union was listed on the ballot. On September 3, 1964, Petitioner certified that the Union had not been designated as the exclusive collective bargaining representative of the employees. The strike and the picketing continued, and form the basis of the § 8(b)(7)(B) charge filed by the Employer.

It may fairly be anticipated that, unless enjoined, the Union will continue the conduct described in Joint Exhibit 1 and which is alleged to constitute a violation of § 8(b)(7)(B), or will engage in similar conduct.

The evidence shows that there were some instances of refusal of truck lines to make deliveries to the Employer because of the existence of the picket line, but that these were at the time of the hearing making deliveries. There was evidence, however, that the Employer had received every delivery intended for it by truck line. Additionally, the testimony at the hearing showed that each delivery intended to have been made by railroad had been made, and that there had been no strike-caused loss of merchandise coming into or leaving the Employer's premises. The Employer is presently operating and has been operating continuously since the strike began.

II. *Statutes Involved.* The jurisdiction of this court, and the extent of its power to act, is set out in § 10(*l*) of the Act, as amended (29 U.S.C.A. § 160(*l*)). The court's duty in this proceeding is to determine whether the petitioner has reasonable cause to believe that the Union is violating § 8(b) (7) (B), and if so whether the requested relief is just and proper.

Section 8(b) (7) (B) (29 U.S.C.A. § 158(b) (7) (B), as amended) reads, in part:

"It shall be an unfair labor practice of a labor organization or its agents—

" * * * *

"(7) to picket or cause to be picketed, * * * any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

" * * * *

"(B) where within the preceding twelve months a valid election under section 159(c) of this title has been conducted * * *."

The Union's defense, that the Petitioner could not have reasonable cause to believe that the Union was violating § 8(b) (7) (B), is predicated on two arguments: First, that its admitted picketing did not have for its purpose one of the objectives proscribed by § 8(b) (7), and second, that the election was not a "valid election" within the meaning of subsection (B).[1]

III. *The Objectives of Union's Picketing.* For purposes of this litigation, the "objectives" of the Union's picketing are not determined by its objectives on September 19, 1961. Petitioner did not expressly state at the hearing that it was relying on that date to establish the objectives. Although his language may be susceptible of two constructions, it is apparent from the petition and the accompanying memorandum that his charge of violation is predicated on the Union's objectives subsequent to August 3, 1964, the date the election results were certified. (Trial Transcript, pp. 142–145).

The picketing was lawfully commenced and maintained during a strike by a recognized incumbent collective bargaining agent in support of a collective bargaining dispute with respect to economic issues. The question here is whether the picketing was converted into picketing for a recognition objective within the meaning of § 8(b) (7) (B) after, (1) the Employer ceased to bargain with or recognize the representative, and (2) the Board had certified that the representative was not designated as the exclusive bargaining representative at an election conducted pursuant to § 9(c).

As I view it, the answer must be in the affirmative. Picketing by an uncertified, unrecognized Union of an Employer in support of contract demands, *must have* as an object, recognition of the Union by the Employer. Satisfaction of the Union's protest would *require* a renewal of recognition. Although without satisfactorily direct holdings, other courts, as well as the Board, seem to have endorsed this analysis. See N. L. R. B. v. Local 182, Internat'l Bro. of Teamsters, 314 F.2d 53 (2d Cir. 1963); Penello v. Warehouse Employees Union Local No. 570, 230 F.Supp. 892 (D.Md.1964); 230 F.Supp. 900 (D.Md.1964); Hoisting and Portable Engineers Local 101, 1963 CCH NLRB Decisions ¶12,077.

Without disagreeing with Judge Learned Hand in his treatment of the problem with which he was concerned in Douds v. Int'l Longshoremen's Ass'n, 224 F.2d 455 (2d Cir. 1955), I disagree with counsel for the Union that Judge Hand's language there should be so applied in

---

1. By its answer, and in the hearing before the court, the Union took the position that this court did not have jurisdiction since an 8(a) (2) charge had been filed against the Employer, and, although the Regional Director had dismissed the charge, it was on appeal to the Board.

The court ruled against the Union on this position. In footnote 1, page 1, of the Union's brief, it now claims that there is another aspect of that argument which is still open; however, it specifically declined to press the point and it will not be further considered.

this case as to preclude recognition as an objective. Judge Hand dealt there with a different provision of the Act in an entirely different legal setting.[2]

Moreover, I do not agree that a finding that the Union was here picketing for recognition would be directly inconsistent with the Board's decision in Building and Construction Trades Council of Santa Barbara County (Sullivan Electric), 146 NLRB #138, 1964 CCH NLRB Decisions ¶13,057, as counsel so vigorously contends. In Sullivan Electric, the Orange County labor council had entered into an agreement with Sullivan Electric on its own behalf and as agent for other labor councils named in the agreement. The Santa Barbara County council was one of these. In part, this agreement provided that "all work performed under the jurisdiction of any union affiliated with the councils shall be performed pursuant to an executed agreement with the appropriate union * * * affiliated with the council in the area in which the work is performed." Subsequently, while the contract was in force, Sullivan began a construction project in Santa Barbara County, whereupon two local unions affiliated with the Santa Barbara council commenced informational picketing without knowledge of the agreement. When the existence of the agreement was discovered, the Santa Barbara council so informed Sullivan Electric. Upon the latter's refusal to carry out the terms of the agreement, the picket signs were changed to allege a breach of the contract. Neither union was certified as employee representative by the Board, nor did either file a 9(c) representation petition within a reasonable time after the start of the picketing.

Sullivan Electric filed a § 8(b) (7) (C) charge against the two unions. The Board, agreeing with the trial examiner, dismissed the complaint with the following language:

"We find * * * that the sole objective of the Respondent's * * picketing was to compel Sullivan to comply with an existing, valid collective-bargaining contract between the parties. * * * It is evident that further bargaining between the parties would be required * * * to implement * * * this agreement, even if Sullivan was willing to comply * * *. Thus, by attributing a bargaining objective to the * * * picketing and by resorting to a strictly literal construction of the statute it is arguable that. the picketing falls within section. 8(b) (7)'s prohibition against picketing to force an employer 'TO RECOGNIZE or BARGAIN WITH a labor organization as the representative of his employees.' * * *. We are convinced that the words: 'recognize or bargain' were not intended to be read as encompassing two separate and unrelated terms. Rather we believe they were intended to proscribe picketing having as. its target forcing or requiring an employer's initial acceptance of the union as bargaining representative of his employees. * * * It is clear that Sullivan had recognized and extended bargaining rights to, the Respondents long before the disputed picketing commenced here and that such picketing therefore was not designed to attain these statutory objectives." 1964 CCH NLRB Decisions ¶13,057, p. 20,805.

Counsel for the Union assert that Sullivan Electric is indistinguishable and. controlling here. Relying on the case, counsel conclude that "where a union which has been recognized by the employer and had a bargaining relationship with him is engaged in a strike over contract terms, it is not seeking:

---

2. It was a criminal proceeding to punish an international union, its local and individuals for contempt in disobeying a court order enjoining them from engaging in strikes for the purposes of forcing their employers to cease doing business. with certain other concerns.

'initial acceptance,' the key phrase in the Board's opinion." (Respondent's Brief, p. 7). This is not a demonstration that the Sullivan Electric holding applies in the present case. It would apply directly only if by previous, and now existing contract, the Employer were bound to bargain with the Union. But, of course, this is not our case. It would apply directly, if we could read into the Board's holding in Sullivan Electric some intent to announce a principle of "relation back" whereby an employer having once recognized and bargained with a union is bound to recognize and bargain with it forever. I can find no justification for such a reading. The holding would apply if the material date for present purposes were September 19, 1961. The assertions of the Union to the contrary notwithstanding, this is not the material date. The material period of time is subsequent to August 3, 1964.

I conclude that the Petitioner herein had reasonable cause to believe that the picketing by the Union was of the type proscribed by § 8(b) (7) (B).

IV. *The Validity of the Election.* Defending against the injunction, the Union takes the position that the "validity" of the election referred to in subsection (B) of § 8(b) (7) of the Act was an element of Petitioner's proof in a § 10(*l*) proceeding; that the election was not valid for four separate reasons;[3] that therefore the § 8(b) (7) (B) charge was not valid, and Petitioner could not have reason to believe that it was valid.

During the hearing, I ruled that I would not pass upon the *merits* of the validity of the election; however, I did permit the Union (in order that it might preserve the question) to introduce evidence in support of its challenge of the constitutionality of the Board's procedure.

The position of the Union is similar to that taken by the respondent in Graham for and on Behalf of N. L. R. B. v. Retail Clerks Internat'l Ass'n, Local No. 57, 188 F.Supp. 847 (D.Mont.1960). There in a § 10(*l*) proceeding to enjoin the Union's alleged violation of § 8(b) (7) (B), the Union defended on the grounds, *inter alia,* that there was a violation of due process because there was no pre-election hearing. In language here pertinent, the court said:

"The validity of the election and procedures followed by the Board are not proper subjects for inquiry here. The validity of the election goes to the substance of the unfair practice charge. The resolution of this charge is within the exclusive jurisdiction of the Board. Respondent will have an opportunity to present to the Board any evidence in support of its contention that the election is invalid. The Act provides specifically for judicial review from the final order of the Board. Section 10(e) and (f). See also Biazevich v. Becker, D.C.S.D.Cal. 1958, 161 F.Supp. 261. The election proceedings are not reviewable in this injunction proceeding. Elliot [sic] v. Dallas General Drivers, N.D. Texas 1959, 38 CCH L.C. para. 65,988. That a representation election was conducted by the Board, and that respondent was not certified as the representative of the employees of Hested by virtue of that election, preclude any further inquiry here as to whether the Board had 'reasonable cause to believe' that an election was held within twelve months prior to the alleged charge." l. c. 853.

Decisions of the Court of Appeals of this Circuit lead me to conclude that that court would, as I now do, follow the reasoning and analysis applied in

---

3. The reasons are set out in the answer, paragraph 5(j) (1–4). Succinctly, they are: decertification petitions were initiated by the Employer; strike breakers were offered super-seniority; the strik-ers should have been allowed to vote and the strike breakers not allowed to vote; and, the strikers should have been allowed to vote since they were not permanently replaced.

Graham to reach the same result. See Boyles Galvanizing Company of Colorado v. Waers, 291 F.2d 791 (10th Cir. 1961); General Drivers, Etc. v. N. L. R. B., 179 F.2d 492 (10th Cir. 1950).

Fay v. Douds, 172 F.2d 720 (2d Cir. 1949), on which the Union relies is patently inapposite. That decision rested on the fact that the procedure there followed foreclosed the union the right to represent the employees "without *any* hearing" (emphasis added) which that court said could "plausibly be thought to be a denial of due process of law." See Vapor Blast Manufacturing Company v. Madden, 280 F.2d 205, 209 (7th Cir. 1960). Contrary to the factual situation in Fay v. Douds, supra, in the present case, the Union will have both a hearing and the right to judicial review of that hearing and the resulting order.

■■■ Assuming, arguendo, that there was a violation of the Union's constitutional rights, there is no evidence that the claim of violation was made known to the Regional Director or to the Board. Nor were the alleged violations asserted in the Union's answer in this proceeding.

The Supreme Court has said that:

"No procedural principle is more familiar to this Court than that *a constitutional right may be forfeited in * * * civil cases by the failure to make timely assertion of the right* before a tribunal having jurisdiction to determine it." Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944) (emphasis added).

And this rule applies to constitutional rights which should have been asserted in administrative proceedings and reviews as well as in judicial proceedings. United States ex rel. Athanasopoulos v. Reid, 110 F.Supp. 200, 203 (D.C.D.C. 1953).

For these reasons, I have declined to pass upon the issue as to whether or not the actions of the Regional Director and the Board offend against the Constitution.

■■ V. *Just and Proper Relief.* Having determined that there is reasonable cause to believe that the Union was and is violating § 8(b) (7) (B), it remains to determine the relief which is "just and proper." Petitioner prays for a temporary injunction enjoining the activities of the Union constituting the alleged violation pending final disposition of the § 8(b) (7) (B) unfair labor practice charge now before the Board. Over the Union's protest that such relief would not be just and proper under the facts here presented, I believe that it is. The requested order is directed only against the labor organization charged with having committed the unfair labor practice, and against agents and persons acting in concert with it; it enjoins only the acts which the Union has been charged with committing in violation of the Act, and similar conduct in violation of the section. The relief sought, being limited to prevention of the specific evil which Congress desired to eradicate, is clearly warranted by the Act.

■■ Opposing the propriety of the injunction, the Union says that "* * * on the record before this Court the strike has been shown to have been caused by the employer's unfair labor practices in refusing to sign a contract unless the union agreed to terms which were nonmandatory subjects of bargaining." (Respondent's Brief, p. 21). Pointing out that the right to engage in unfair labor practice strikes is an especially protected and respected right, the Union concludes that "an injunction against the picketing would not only relieve the employer from the picket line but would in effect allow him to take advantage of his own wrong * * *." This line of reasoning is not convincing.

The Union's major premise, that the Employer has committed an unfair labor practice and hence that the strike was an unfair labor practice strike was pressed before the Regional Director and the Board, in two separate proceedings: The 17–CA–2118 unfair labor practice

charge; and the Union's objections to the validity of the election. In the former proceeding, it was held that the evidence was insufficient to sustain the charge, and in the latter, this was reasserted. I am not unaware of the testimony on which the Union relies to show that the Employer was guilty of an unfair labor practice for its failure to bargain in good faith by insisting to an impasse on non-mandatory subjects of bargaining. I have re-read the record in that regard and I have examined the exhibits jointly submitted, also a part of the record before me. These exhibits reflect an examination by the Regional Director and by the Board of the same evidence which is now before me. In their expert judgment they determined that the evidence was insufficient. Since the question involves complicated issues of law and fact, and because the record before me is meager on the relevant facts, I prefer to rest my discretion on the fully considered judgment of the Regional Director and the Board. Furthermore, this allegation of an unfair labor practice goes directly to the merits of the § 8(b) (7) (B) charge filed by the Employer, affected as it is by the validity or invalidity of the election. During the hearing I ruled that I would neither hear evidence on, nor rule on, the merits of the alleged invalidity of the election. That the question now comes up in a different context does not alter my opinion that this court lacks jurisdiction to determine the issue in this proceeding. In this light and for these reasons, I decline to exercise my discretion to deny the injunction on the basis of asserted unfair labor practices by the Employer.

Next, the Union urges that in the exercise of its discretion this court should deny the injunction on the ground that the evidence at the hearing demonstrated that the Employer entered into and maintained an illegal union security contract. The Regional Director, in case No. 17–CA–2501, found that " * * * the contract clauses in issue were never enforced and * * * were revised to

comply with applicable law." The charge was therefore dismissed. Nevertheless, the Union now asks the court to assume, because there is no evidence to the contrary, that those clauses were the "cause for the Pressmen's Union to work throughout the strike" and on the basis of this assumption to deny the injunction. Whatever conclusion such an assumption might lead to, I cannot make it. The only reasonable assumption, in light of the opinion and finding of the Regional Director, would be to the contrary.

The Union next points out that the record shows that the strike is having no economic effect on the Employer's business and urges that it would serve no purpose to enjoin the picketing, even though it concedes that the strike and picketing need not be effective in order to be illegal.

This argument, implicitly suggesting that the court balance the interests of the two parties most intimately involved, is apparently founded on a misinterpretation of this court's duty in a § 10(l) proceeding. As another District Court has explained:

" 'For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases.' Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 * * * [Brown, for and on Behalf of N.L.R.B. v. Pacific Telephone and Telegraph Co., 218 F.2d 542, 544 (concurring opinion) (9th Cir. 1955)]. Congress has found that the discontinuance of conduct like respondent's pending the disposition by the Board of the unfair labor practice charge is necessary 'adequately to protect the public welfare which is inextricably involved in labor disputes.' S.Rep.No. 105, 80th Cong., 1st Sess., p. 8 'When Congress itself has struck the balance, [between conflicting public interests] a court of equity is not justified in ignoring that pronouncement under the guise of exercising

equitable discretion.'" Schauffler for and on Behalf of N. L. R. B. v. Local 1291, Inter. Longshoremen's Ass'n, 188 F.Supp. 203, 211–212 (E.D.Pa.1960).

The Union presses a third argument that the injunction would be improper: The First Amendment. The Union points out that "picketing is protected by the First Amendment" and that the "mere fact that there is picketing does not automatically justify its restraint without an investigation into its conduct and purposes." From this base, the Union asserts:

> "* * * The curtailment of picketing has been justified on the assumption that picketing, though speech, is speech, *plus,* i. e., that it has an economic impact aside from its mere communication of ideas. This cannot be said of the picketing in this case, which has continued for over three years without any economic impact. Thus, it is only speech, and mere speech is immune from injunction under the First Amendment." (Respondent's Brief, pp. 23–24).

Curtailment of picketing is justified on the interpretation of picketing as *free speech plus the exercise of economic power, not on its interpretation as speech plus economic impact.* See generally, International Broth. of Teamster's, etc., Union v. Vogt, Inc., 354 U.S. 284, esp. 291–293, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1956); Giboney v. Empire Storage & Ice Co., 336 U.S. 490, esp. 502–504, 69 S.Ct. 684, 93 L.Ed. 834 (1949); and Thomas v. Collins, 323 U.S. 516, esp. 536–538, 543–544, 65 S.Ct. 315, 89 L.Ed. 430 (concurring opinion) (1945). And this is precisely the sort of case where this distinction must be kept in mind. Congress did not make a violation of § 8(b) (7) (B) depend on a showing of economic impact or effect, nor did it make the propriety of injunctive relief under § 10(*l*) dependent on such a showing.

In the final footnote of its brief, the Union asserts yet another reason why the First Amendment protects the present picketing. The foundation of this additional reason is "the rule * * * stated in the Vogt case that picketing may not be enjoined unless its object is to force or require an employer to commit an illegal act." I find in the Vogt case (354 U.S. 284, 77 S.Ct. 1166) neither such a rule nor language justifying the conclusion that the Supreme Court intended to announce or apply such a rule.

The injunction will be granted.