**John A. PENELLO, Regional Director of the Fifth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,**

v.

**Civ. No. 15602.**

United States District Court
D. Maryland.

June 16, 1964.

---

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Julius G. Serot, Asst. Gen. Counsel, N. L. R. B., of Washington, D.C., and David C. Sachs, Regional Atty., Henry L. Segal, Asst. Regional Atty. and Edward J. Gutman, Atty., N. L. R. B., Region 5, Baltimore, Md., for petitioner.

**902**

Jacob J. Edelman and Bernard W. Rubenstein, Baltimore, Md., for respondents.

THOMSEN, Chief Judge.

After the decision of this Court in 230 F.Supp. 892 (1964), which should be read and considered as a part of this opinion, the Regional Director (petitioner) reconsidered the matter and made a new determination that he has reasonable cause to believe that the charges filed by Whitaker against respondents are true and that a complaint of the Board based on said charges should issue. He therefore filed in this Court on May 28, 1964, a new petition, Civil No. 15602, which alleges the same facts as the former petition (set out in the former opinion) with one exception.

In his former petition petitioner alleged that he had reasonable cause to believe and believed that respondents had engaged in and were engaging in the following acts, inter alia, in violation of sec. 8(b) (7) (C):

"(g) In furtherance of the aforesaid demands for recognition and bargaining, Respondents, since on or about October 16, 1963, have picketed Whitaker.

"(h) The aforesaid picketing has been conducted for more than thirty (30) days without the filing of a petition under Section 9(c) of the Act for a Board election.

"(i) An object of Respondents' picketing set forth in subparagraphs (g) and (h) above, is to force or require Whitaker to recognize or bargain with Respondents as the representative of Whitaker's employees, notwithstanding that neither Respondent is currently certified as the representative of such employees."

In his present petition the corresponding subparagraphs read as follows:

"(g) Since on or about October 16, 1963, Respondents have picketed Whitaker.

"(h) Beginning with some time since the picketing referred to in par. (g) above began, but in any event not later than January 21, 1964, an object of said picketing was to force or require Whitaker to recognize or bargain with Respondents as the representative of Whitaker's employees, notwithstanding that neither Respondent is currently certified as the representative of such employees.

"(i) The aforesaid picketing has been conducted for more than thirty (30) days without the filing of a petition under Section 9(c) of the Act for a Board election."

Petitioner no longer relies on his argument that the picketing, which originally had an economic object, automatically acquired an added, recognitional object on October 16, 1963, when Whitaker challenged respondents' status as the representative of a majority of its employees after Whitaker had employed permanent replacements for the strikers. Petitioner now argues that there is reasonable cause to believe as a fact that since January 21, 1964, at the latest, the picketing has had the additional objective "to force or require Whitaker to recognize or bargain with Respondents", as well as the original economic objective. This Court denied the former petition because petitioner did not show that he had determined that the picketing had in fact acquired the recognitional objective.

The parties have stipulated that all of the evidence submitted in the former case, Civil No. 15305, may be considered as part of the record in this case. From that evidence the Court finds that all of the facts (but not all of the conclusions) alleged in the present petition are true. Those facts comprise the jurisdictional facts set out in footnote 4 in the previous opinion, the other facts found in that opinion, and the facts set out in the new paragraphs g, h and i, quoted above. Particularly the Court finds as a fact that there is reasonable cause to believe that the picketing has *in fact* had the alleged recognitional objective since January 21, 1964. That is the date on which the General Counsel

ruled that Whitaker had not committed an unfair labor practice when it broke off negotiations with respondents. The effect of his ruling was that Whitaker had the legal right to withdraw recognition of respondents, after it had employed permanent replacements for all the strikers, if there was reasonable ground to believe that respondents no longer represented a majority of the employees.[1]

Respondents do not seriously challenge the finding that the picketing acquired a recognitional objective after January 21, 1964, although they maintain that its principal objective was still economic. Their present argument is based primarily on a recent decision of the Board, Building and Construction Trades Council of Santa Barbara County, et al. (Sullivan Electric Co.), Case No. 21–CF–107, 146 N.L.R.B. 138, which was not brought to the attention of this Court in the earlier case because it had not been published. In that case the Board said:

> "We find, in agreement with the Trial Examiner, that the sole objective of the Respondents' allegedly unlawful picketing was to compel Sullivan to comply with an existing valid collective-bargaining contract between the parties. However, as described fully in the Trial Examiner's Decision, it is evident that further bargaining between the parties would be required in order to implement the terms of this agreement, even if Sullivan was willing to comply therewith. Thus, by attributing a bargaining objective to the Respondents' picketing and by resorting to a strictly literal construction of the statute, it is arguable that the picketing falls within Section 8(b)(7)'s prohibition against picketing to force an employer *'to recognize or bargain with* a labor organization as the representative of his employees.' [Empasis supplied.] Nevertheless, after analyzing the overall Congressional purpose behind the enactment of this section,* we are convinced that the words 'recognize or bargain' were not intended to be read as encompassing two separate and unrelated terms. Rather, we believe they were intended to proscribe picketing having as its target forcing or requiring an employer's initial acceptance of the union as the bargaining representative of his employees. When viewed in this posture, it is clear that Sullivan had recognized and extended bargaining rights to the Respondents long before the disputed picketing commenced here and that such picketing therefore was not designed to attain those statutory objectives."

The facts of that case are quite different from the facts here, but respondents rely on the statement that the language of the statute was intended "to proscribe picketing having as its target forcing or requiring an employer's *initial acceptance of the union* as the bargaining representative of his employees." (Emphasis by respondents).

■ This Court agrees with the Board that "the words 'recognize or bargain' were not intended to be read as encompassing two separate and unrelated terms." And this Court believes that the statute was intended to proscribe picketing having as its target forcing or requiring an employer's acceptance of the union as the bargaining representative of his employees. This Court questions, however, the justification for inserting the word "initial" before the words "acceptance of the union". The word "initial" was not necessary for the decision of that case; the employer there involved was at all material times obliged to recognize the union, since there was

---

1. Which it had a right to do, since the strike was an economic strike. N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); Celanese Corp. of America, 95 N.L.R.B. 664 (1951).

\* The Board cited International Hod Carriers, Local 840, AFL-CIO (C. A. Blinne Construction Company), 135 N.L.R.B. 1153.

**904**

an unexpired contract between them. The Board did not cite any legislative history or other reason or authority in support of the dictum.

■ This Court finds no justification in the statute, the legislative history or the cases interpreting the statute, for limiting sec. 8(b) (7) to picketing having as its target forcing or requiring an employer's *initial* acceptance of the union as the bargaining representative of his employees.[2] Such a construction would restrict the ends which are sought to be achieved by sec. 8(b) (7) (A) and 8(b) (7) (B) as well as by 8(b) (7) (C).

The Court has no doubt that Congress intended sec. 8(b) (7) (B) to apply to the *situation* that would exist if respondents had lost an election, whether it was called for by Whitaker, by its new employees, or by respondents. Whether sec. 8(b) (7) (C) was intended to apply to the present situation is not so clear.

As this Court pointed out in its previous opinion, there are policy arguments in favor of allowing a union to continue picketing in such a situation as is pre-sented by this case without being required to call for an election under sec. 9(c), and policy arguments the other way. Those arguments might properly be considered by Congress; but the courts must take the statute as it stands, with such aid from the legislative history and judicial decisions as may be available. For the reasons discussed in the previous opinion, this Court has concluded that the language of the statute goes beyond the mere outlawing of blackmail picketing, and clearly provides that if "forcing or requiring an employer to recognize or bargain with a labor organization as a representative of his employees" has *in fact* become "an object" of the picketing, whether or not it was an original object, the provisions of sec. 8(b) (7), as properly construed, must be applied.

■ Since, at the time the present petition was filed, the picketing with the added recognitional object had continued for more than thirty days after January 21, 1964, and still continues, without a petition under sec. 9(c) having been

2. "Sec. 8 (29 U.S.C.A. 158) Unfair labor practices

    *    *    *    *    *

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

"(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title,

"(B) where within the preceding twelve months a valid election under section 159 (c) of this title has been conducted, or

"(C) where such picketing has been conducted without a petition under sec-tion 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c) (1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employer by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

"Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection."

filed, there is reasonable cause to believe that respondents were and are engaging in an unfair labor practice prohibited by sec. 8(b) (7) (C).

■■ That conclusion, however, does not necessarily require that an injunction be issued in this case. The final question is whether issuance of the requested injunction would be "just and proper". In the ordinary case under sec. 10(*l*), it is clear that injunctive relief is necessary to achieve the Congressional objective.[3] In the present case it is not clear that such relief is either necessary to achieve that purpose or that it would be just and proper. Both Whitaker and its employees have had the right to call for an election under 9(c), before or after October 16, 1963, when Whitaker first challenged respondents' representation of its employees. Although respondents also have had the right to call for an election, there is serious doubt whether it would be a wise policy to force a union to call for an election as soon as possible after it begins an economic strike upon the expiration of a contract, in order to assure its right to continue picketing if the employer hires permanent replacements. The Board will not direct that such an election be held unless it appears that a question of representation exists. Sec. 9 (c) (1) (B) and 9(c) (2). The Court doubts the fairness of requiring a union to delay its call for an election in such a case as this until the employer has hired so many replacements that a question of representation may properly be found to exist. The Court also doubts the fairness of requiring a union in such a case to decide at its peril if and when an additional object has been added to its picketing, or, more exactly, to decide whether the Gen-

eral Counsel and a district court are likely to hold that an additional object has been added and, if so, on what date. A union would violate sec. 8(b) (7) (C) by picketing more than a reasonable time, not to exceed thirty days, after such date.

In this case the strike is and has always been legal, the original picketing was legal, the picketing has always been peaceful, and no evidence has been offered showing that there has been any substantial obstruction to the free flow of commerce. The employer has always been and still is able to clarify the situation by calling for an election, which, if lost by respondents, would permit a charge that respondents were violating sec. 8(b) (7) (B) if they continued to picket. For the foregoing reasons the Court concludes that it would not be just and proper to issue an injunction in this case at this time.[4]

*Conclusions of Law*

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding and under sec. 10(*l*) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents are labor organizations within the meaning of secs. 2(5), 8 (b) and 10(*l*) of the Act.

(b) Whitaker is engaged in commerce within the meaning of secs. 2(6) and (7) of the Act.

(c) Respondents have engaged in unfair labor practices within the meaning of sec. 8(b) (7) (C), of the Act, affecting commerce within the meaning of secs. 2(6) and (7) of the Act.

---

3. Douds v. International Longshoremen's Ass'n, 2 Cir., 242 F.2d 808, 811 (1957); Madden v. International Organization of Masters, Mates & Pilots, 7 Cir., 259 F. 2d 312, 313 (1958); Douds v. Local 294 Teamsters etc., N.D.N.Y., 75 F.Supp. 414 (1947); see also Brown for and on Behalf of N. L. R. B. v. Pacific Telephone & Telegraph Co., 9 Cir., 218 F.2d 542,

544–545 (1954); Evans v. International Typographical Union, S.D.Ind., 76 F.Supp. 881 (1948).

4. The Court intimates no opinion as to whether an injunction would be just and proper after twelve months from the date of the strike, in view of sec. 9(c) (3), or upon a showing of substantial obstruction to the free flow of commerce.

3. The issuance of the injunction prayed for would not be just and proper at this time, and should be denied.

It is so ordered.