708 F.2d 467
 113 L.R.R.M. (BNA) 3107, 97 Lab.Cas. P 10,242
 Robert H. MILLER, Regional Director of Region 20 of the
National Labor Relations Board, for and on behalf
of the National Labor Relations Board,
Petitioner-Appellee,
v.
UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 498,
AFL-CIO, Respondent-Appellant.
 No. 83-1752.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 17, 1983.
Decided June 14, 1983.
 
 David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for respondent-appellant.
 Joseph P. Norelli, Deputy Asst. Gen. Counsel, Washington, D.C., for petitioner-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before HUG and FARRIS, Circuit Judges, and IRVING,* District Judge.
 FARRIS, Circuit Judge:
 
 
 1
 Local 498 of the United Food and Commercial Workers Union appeals from an order prohibiting picketing of One Stop Supermarket's two locations at Grass Valley and Sutter Creek, California. The injunction required Local 498 and Local 17 of the United Food and Commercial Workers Union to refrain from all picketing for a period of thirty days. It thereafter forbade picketing for the purpose of pressuring One Stop to recognize either local as the collective bargaining representative of its employees pending formal disposition of the store's unfair labor practice complaints before the National Labor Relations Board. Local 498 challenges that part of the injunction ordering a hiatus in all picketing. We reverse and remand to allow the district court to specify the grounds upon which it ordered the injunction or, in the alternative, to modify the relief it granted. The court may conduct further fact-finding if necessary. Following that proceeding, which should be concluded at the earliest possible date, the cause will be resubmitted to this panel for review and final disposition.
 
 FACTS
 
 2
 The Shop'N Save Supermarket in Grass Valley, California, had collective bargaining agreements with two locals of the United Food and Commercial Workers Union. The store's grocery clerks were members of Local 17 and its meat department employees belonged to Local 498. Shop'N Save ceased operation on November 24, 1982, and dismissed all of its employees. Robert Sexton and Fred Claypool purchased Shop'N Save and hired a new labor force to staff the store. The thirty-two new employees did not include fourteen grocery clerks and three meat department employees formerly employed by Shop'N Save and represented by the locals. The store reopened on December 2, 1982, as One Stop Supermarket.
 
 
 3
 On One Stop's first day of operation representatives of Local 17 visited the store and questioned Sexton and Claypool to determine whether they intended to honor the Shop'N Save contract. Sexton responded that since Shop'N Save had closed, he did not believe the agreement's successorship clause bound the new owners. Before leaving, Frank Neth, Executive Officer of Local 17, stated that if One Stop did not assume the contract, his union would organize the store. A similar meeting took place between Sexton and Alfred Rasmussen, Secretary Treasurer of Local 498, on December 7.
 
 
 4
 Picketers first appeared in front of the Grass Valley store on December 10. They carried signs which bore the following legend:
 
 ONE STOP SUPERMARKET
 UNFAIR TO ORGANIZED LABOR
 UNITED FOOD AND COMMERCIAL WORKERS
 LOCAL UNION # 17
 SANCTIONED BY CENTRAL LABOR COUNCIL
 AFL-CIO
 
 5
 The pickets included members of Local 17 and Local 498. The district court found that at all times during the picketing which followed, the two locals were acting in concert to achieve a single recognitional objective.
 
 
 6
 On January 10, One Stop registered an unfair labor practice complaint with the National Labor Relations Board, alleging that Local 17 had violated Section 8(b)(7)(C) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(7)(C),[1] by engaging in recognitional picketing for more than thirty days without having filed a petition for a representation election. Local 17 entered into a settlement agreement with the Regional Director in which it agreed to halt any further recognitional picketing of One Stop and to refrain from all picketing for the fifteen-day period between January 23 and February 7.
 
 
 7
 On January 20, One Stop received a telegram from Rasmussen asserting that Local 498 did not believe that the store paid its meatcutters area-standard wages and benefits. One Stop responded through its attorney, explaining that it paid its only meatcutter, co-owner Robert Sexton, in excess of the area standard. The next day One Stop filed a second complaint with the Board alleging that Local 498 was engaging in unfair labor practices. In a January 22 telegram Local 498 expanded its claim that One Stop paid substandard wages and benefits to include all meat department employees. On the date Local 17's picketing was scheduled to cease, the same individuals who had previously demonstrated with Local 17 signs carried placards stating:
 
 PLEASE
 WE ASK YOU
 NOT TO PATRONIZE
 ONE STOP
 MARKET
 THIS MEAT DEPARTMENT
 DOES NOT COMPLY WITH
 PREVAILING WAGES AND BENEFITS
 BUTCHERS UNION, UFCW, AFL-CIO
 
 8
 Upon investigation, the Board's Regional Director determined that there was reasonable cause to believe that One Stop's charges against both unions were true and petitioned the district court for an injunction. The court's order enjoining the picketing issued at a hearing held February 23. As of that date, One Stop's Grass Valley location had been picketed for all but eight of the days that it had been open for business. The store could not obtain fresh fish or frozen foods and its meat deliveries were reduced by forty percent. Several suppliers of brand name processed foods also refused to make deliveries. In total, an average of sixty to seventy percent of One Stop's deliveries was interrupted during the picketing.
 
 ANALYSIS
 
 9
 Pursuant to Section 10(l ) of the National Labor Relations Act, 29 U.S.C. Sec. 160(l ),[2] a Regional Director of the National Labor Relations Board who has reason to believe that a union has engaged in conduct proscribed by section 8(b)(7) may petition the district court for an injunction pending final adjudication of the matter before the Board. Local 498 does not assert any error in the district court's finding that it was reasonable for Regional Director Miller to believe that the charges against it were true. Nor does it challenge the propriety of the preliminary injunction against picketing for recognitional purposes. The sole issue it raises on appeal is whether the district court could properly order a hiatus in all picketing for thirty days. Local 498 contends that section 10(l ) grants the court jurisdiction to enjoin only illegal picketing and may not be invoked to bar picketing for a permissible purpose. In the alternative the Local argues that even if the statute confers such power upon the district court, the order in this case violated its first amendment rights.
 
 
 10
 The Board asserts that jurisdiction to order a hiatus in all picketing is conferred by the broad language of section 10(l ), which permits the district court to remedy illegal recognitional picketing by ordering such injunctive relief "as it deems just and proper, notwithstanding any other provision of law." The legislative history of section 10(l ), which was added to the Act in 1947, indicates that Congress perceived the need for interim relief during the administrative hearing process in order to prevent substantial injury to employers before the Board could obtain judicial enforcement of its decisions following final adjudication. See S.Rep.No. 105, 80th Cong., 1st Sess. 27, reprinted in 1 NLRB, Legislative History of the Labor-Management Relations Act, 1947, at 433 (1948); see also Sears, Roebuck & Co. v. Carpet Layers Local 419, 397 U.S. 655, 658 & n. 5, 90 S.Ct. 1299, 1301 & n. 5, 25 L.Ed.2d 637 (1970) (per curiam); Hendrix v. International Union of Operating Engineers Local 571, 592 F.2d 437, 441-42 (8th Cir.1979); Compton v. National Maritime Union, 533 F.2d 1270, 1276 (1st Cir.1976). However, by providing an effective remedy against the practices of organized labor it deemed unfair, Congress did not intend to override its policy favoring lawful picketing implicit in the Norris-LaGuardia Act's strict limitation on federal jurisdiction to issue injunctions in cases arising out of "labor disputes." 29 U.S.C. Secs. 101-115. See Hendrix, 592 F.2d at 445-46; McLeod v. Business Machine & Office Appliance Mechanics Conference Board Local 459, 300 F.2d 237, 239-240 (2d Cir.1962). We hold that a district court has jurisdiction to order a hiatus in all picketing under Sec. 10(l ) only when presumptively legitimate picketing would perpetuate the effects of prior illegal activity. Relief under these limited circumstances furthers the purpose of section 10(l ) to "restore or preserve the status quo pending litigation," S.Rep. No. 105, 80th Cong. 1st Sess. 27, reprinted in 1 NLRB, Legislative History of the Labor-Management Relations Act, 1947, at 433, while circumscribing a union's right to picket only to the extent made necessary by its impermissible conduct.
 
 
 11
 At the hearing before the district court, the Board requested a hiatus in all picketing in order to allow the employers, the employees, and the public to distinguish the picketing for an unlawful recognitional purpose from a new round of legal picketing. The Board claimed that without such a break, further picketing would serve as a signal to employees of suppliers to continue to refuse to provide services to One Stop. The Board also contended that the thirty-day hiatus was necessary to counteract the weakening effect of the unlawful picketing. There is evidence in the record that One Stop had been so weakened by the recognitional picketing that if new, legitimate picketing were permitted without allowing a period for normal operation, the store would be forced to close. While the district court could have ordered a hiatus on either of these grounds, it made no findings of fact specifically directed toward its decision to halt all picketing for thirty days. Mere allegations that the thirty-day hiatus was necessary to preclude continued picketing from having a signal effect or to restore the status quo by counteracting the hardship created by the unlawful picketing are an insufficient basis for injunctive relief. However, if on remand the district court should again conclude that a limitation on Local 498's right to protest is warranted, it must carefully tailor its injunction in order to permit the maximum amount of legitimate activity while erasing the illegal recognitional conduct and its deleterious impact. Cf. Potter v. Houston Gulf Coast Building Trades Council, 482 F.2d 837, 841 (5th Cir.1973) (citing Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957)) (secondary boycott).
 
 
 12
 An injunction which prohibits only that activity which would perpetuate the effects of illegal picketing will not abridge Local 498's first amendment rights. Though peaceful picketing for a lawful purpose is an activity safeguarded by the first amendment, NAACP v. Claiborne Hardware Co., --- U.S. ----, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), it is subject to regulation since picketing involves elements of conduct as well as the communication of ideas. International Brotherhood of Teamsters Local 695 v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957). The act of patrolling, which is not constitutionally protected, is often a more forceful deterrent to individuals about to enter a business establishment than the ideas expressed on a picket line. NLRB v. Retail Store Employees Union Local 1001, 447 U.S. 607, 619, 100 S.Ct. 2372, 2379, 65 L.Ed.2d 377 (1980) (Stevens, J., concurring); Bakery Drivers Local 802 v. Wohl, 315 U.S. 769, 776-77, 62 S.Ct. 816, 819-20, 86 L.Ed. 1178 (1942) (Douglas, J., concurring). Because of the government's strong interest in regulating the economic relationship between labor and management, Congress may constitutionally enact measures which impact on the speech element of picketing. International Longshoremen's Association v. Allied International, Inc., 456 U.S. 212, 226-27, 102 S.Ct. 1656, 1664-65, 72 L.Ed.2d 21 (1982); Retail Store Employees Union, 447 U.S. at 617-18, 100 S.Ct. at 2378-79 (Blackmun, J., concurring). Courts of Appeals have uniformly upheld the section 8(b)(7) restriction against picketing for recognitional purposes as a legitimate exercise of that authority to promote labor democracy and the orderly settlement of representational controversies by allowing employers and employees the opportunity to choose freely through elections whether they wish to unionize. See NLRB v. International Brotherhood of Electrical Workers Local 265, 604 F.2d 1091, 1099-1100 (8th Cir.1979); International Brotherhood of Teamsters Local 344 v. NLRB, 568 F.2d 12, 21 (7th Cir.1977); NLRB v. Lawrence Typographical Union No. 570, 376 F.2d 643, 654 (10th Cir.1967); NLRB v. Local 3, International Brotherhood of Electrical Workers, 339 F.2d 600, 601 (2d Cir.1964) (per curiam); Dayton Typographical Union No. 57 v. NLRB, 326 F.2d 634, 646-49 (D.C.Cir.1963).
 
 
 13
 Informational picketing is an effective means of broadcasting a message. However, when this mixture of speech and conduct immediately follows recognitional picketing, an injunction authorized by the language of section 10(l ) would be constitutional "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); see United States v. Grace, --- U.S. ----, 103 S.Ct. 1702, 1706-07, 75 L.Ed.2d 736 (1983). An injunction limiting the right to demonstrate in the wake of recognitional picketing and serving the same important interests as section 8(b)(7) can satisfy this test. Such an order, when directed at the perpetuation of the effects of prior illegal activity, promotes the purposes of Congress without regard to the content of the ideas expressed. If the relief is cast in the least restrictive terms possible, then the injunction will strike the proper balance between the first amendment freedoms of labor and an employer's statutory right to redress. In some cases a temporary ban on all picketing may be appropriate.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 *
 Honorable J. Lawrence Irving, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Section 8(b)(7), 29 U.S.C. Sec. 158(b)(7), provides in relevant part:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 * * *
 (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees ... unless such labor organization is currently certified as the representative of such employees:
 * * *
 (C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.
 * * *
 
 
 [2]
 Section 10(l ) of the National Labor Relations Act, 29 U.S.C. Sec. 160(1) states:
 Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of ... section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law.