D. Randall FRYE, Regional Director of the Ninth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner–Appellee,

v.

DISTRICT 1199, the HEALTH CARE AND SOCIAL SERVICES UNION, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Respondent–Appellant.

No. 92–6102.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1993.

Decided June 21, 1993.

Ellen A. Farrell, Deputy Associate Gen. Counsel (briefed), Corinna L. Metcalf (argued), Elinor L. Merberg, N.L.R.B., Office of the Gen. Counsel, Washington, DC, D. Randall Frye, Regional Director, Carol L. Shore, National Labor Relations Board, Region 9, Cincinnati, OH, for petitioner-appellee.

James B. Robinson, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, Larry Engelstein (argued and briefed), Service Employees Intern. Union, Washington, DC, for respondent-appellant.

Richard DuRose (argued and briefed), Foley & Lardner, Orlando, FL, for amicus curiae.

Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.[*]

PER CURIAM.

District 1199, The Health Care and Social Services Union, Service Employees International Union, AFL–CIO ("Union") appeals an order of the district court that limits its picketing outside a rural nursing home. The Union argues that the district court does not have the authority to grant relief that neither the regional director of the National Labor Relations Board ("NLRB") nor the nursing home requested, and that the relief ordered by the court restrains lawful conduct. For the reasons stated, we affirm.[1]

## I

The Union represents the service and maintenance employees at the J.J. Jordan Geriatric Center in Louisa, Kentucky. The Center is a licensed nursing facility with approximately 120 beds. There are two entrances from a rural highway, approximately 150 feet apart. The Center operates 24 hours a day, with Union employees present at all times.

After the collective bargaining agreement expired, the two sides could not agree on a new contract. The unit employees, with the support of the Union, struck. At the outset of the strike, the Union established a picket line, and Union supporters began a series of violent acts, including a physical attack on the Center's administrator and other employees. Union activists blocked the entrances off the highway, thereby preventing delivery people and employees from arriving at the Center. Union supporters also harassed visitors to the Center, and loud picketing at all hours disturbed the elderly residents of the nursing home.

On July 2, 1992, the Center obtained a temporary restraining order in state court against trespassing and assaults at the Center. However, assaults and property damage continued. Both sides then filed charges with the regional director of the NLRB charging sundry unfair labor practices. On July 13, the regional director issued an unfair labor practice complaint asserting that the

---

[*] The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Since the oral hearing in this case, the ALJ determined that the Union committed unfair labor practices, and a specific cease and desist order was issued. This action does not moot this case, however, as the unfair labor practice case remains pending before the NLRB pending a final decision by the Board. *Barbour v. Central Cartage, Inc.*, 583 F.2d 335 (7th Cir.1978); *Humphrey v. International Longshoremen's Assoc.*, 548 F.2d 494, 496 n. 1 (4th Cir.1977).

Union had engaged in misconduct. The regional director then filed a petition under Section 10(j) of the National Labor Relations Act ("NLRA"), 29. U.S.C. § 160(j), with the federal district court seeking a temporary restraining order against various Union practices.

On July 20, 1992, a hearing on the motion for a temporary restraining order was held. Center employees detailed the violence and property damage that had occurred, as well as other incidents that justified judicial intervention. After the hearing, the court issued the regional director's proposed restraining order, stating that the injunction was necessary pending final disposition by the Board. The order prevented the Union from, *inter alia*, engaging in mass picketing and thereby blocking ingress and egress; inflicting or attempting to inflict injury or damage to persons or property associated with the Center; threatening non-striking employees; possessing weapons on the picket line; and in any manner restraining or coercing the employees of the Center.

The court further stated that:

Well, the people that are there are the aged and the infirm, and they go there for peace and quiet to live out what days remain to them. And this just absolutely blows my mind to think about those old people ... in that nursing home and young riot [sic] occurring on the street in front of the nursing home. They are at a point where they don't need a lot of excitement. . . . That's why I am going to add a few—add a few things ... because of the nature of the facility that is having this labor problem.

Four days later, the court made the following additions to the order presented by the regional director: 1) that no more than three picketers be present at any time; 2) that picketing only be allowed from 9 A.M. to 5 P.M.; 3) that only informational signs be displayed; 4) that all pickets be restrained from blocking the public highway, or picketing on the highway; 5) that pickets be placed no closer than twenty-five feet to either side of any existing driveway of the Center; 6) that picketers shall not enter the Center grounds without permission of the owners;

7) that picketers be quiet, and all persons refrain from using bull horns, loud-speakers, etc. due to the nature of the premises.

The Union then filed a timely notice of appeal challenging each of the above restrictions. The Union's appeal does not dispute that there was reasonable cause for the injunction requested by the director. Rather, the appeal only contests the propriety of the parts of the court's order that went beyond the director's request. On September 4, 1992, on a motion filed by the regional director, the court slightly modified its order. The court: 1) eliminated the 9–5 time limit restriction on picketing contained in the original order; and 2) amended the sign rule to allow picketers to appeal for support from customers, delivery persons and non-striking employees. Appellant now contests the district court's modified order.

## II

Under Section 10(j) of the NLRA, codified at 29 U.S.C. § 160(j), district courts are authorized to issue interim injunctions in order "to give the Board a means of preserving the status quo pending the completion of its regular procedures." *Gottfried v. Frankel*, 818 F.2d 485, 494 (6th Cir.1987). A district court must determine whether there is reasonable cause to believe that a violation of the Act has been committed and whether injunctive relief is "just and proper." *Id.* at 493–94. This determination by the district court is reviewed under an abuse of discretion standard. *Ibid.*

## A

Appellant first argues that the district court does not have the authority to order relief not specifically requested by the regional director. The last sentence of Section 10(j) provides that the district court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it *deems just and proper.*" (emphasis added). Thus, the clear language of the Act gives the district court discretion to grant whatever relief it considers just and proper. Courts have previously recognized this discretion when granting relief under Section

10(j). *See Fleischut v. Nixon Detroit Diesel, Inc.,* 859 F.2d 26, 30 (6th Cir.1988) (proper relief is committed to the "discretion of the trial judge"); *Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1192 (5th Cir.1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976) ("just and proper" standard under § 10(j) confers discretion on the trial court as to appropriate relief); *Retail Clerks Union v. Food Employers Council, Inc.,* 351 F.2d 525, 529 (9th Cir.1965) ("it does not follow that once having petitioned the court for injunctive relief ... the Regional Director retains discretion to dictate the precise form of relief to be granted by the district court.").

■ Moreover, the director's petition for relief, in addition to the specific relief requested, also asked that the "Court grant such further and other relief as may be deemed just and proper." This statement in the request for relief gives the court explicit authority to grant whatever relief it deemed appropriate. Accordingly, the court had the authority to order additional relief, for two alternative reasons.

## B

We next must analyze whether the court's relief was proper. The Union argues that the district court is attempting to proscribe lawful conduct. Specifically, the Union contests the limitations placed upon the type of signs that can be displayed, and the limitations on the quantity, location, and noise level of picketers.

### 1. *Signs*

■ The first order allowed only informational signs to be displayed. The amended order provides that "picket signs that threaten or coerce employees may not be displayed, provided however, that such signs may appeal for support of respondent's picket line from customers, delivery persons, and nonstriking employees." In its supplemental memorandum, filed after the court amended its order, the Union argues that the modified order was improper because it prevents appeals to the general public.

The supplemental order is lawful. It explicitly permits appeals to "customers, delivery persons and nonstriking employees," the bulk of the general public to whom the Union might wish to communicate. The Union is free to convey its message. The court only proscribed signs that "threaten or coerce." Such a limitation is proper. *Senn v. Tile Layers Union,* 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229 (1937).

### 2. *Quantity, Location, and Noise Level of the Picketers*

■ The district court noted that the Union apparently had ignored the state court order, as masses of picketers continued to surround the Center. Accordingly, the court found a "need to be a little more specific" in defining the limitations placed upon the picketers. Appellant argues that these limitations are improper.

"Peaceful picketing for a lawful purpose is an activity safeguarded by the First Amendment." *Miller v. United Food and Commercial Workers Union,* 708 F.2d 467, 471 (9th Cir.1983). However, the Board has held that picketing in numbers disproportionate to what would be reasonably necessary to make known to the public and non-employees the union's message is excessive and unlawful if it disturbs ingress and egress. *Metropolitan District Council of Philadelphia (Reeves, Inc.),* 281 NLRB 493 (1986). Additionally, a district court has the authority to enjoin all picketing when even legitimate picketing would perpetuate the effects of prior illegal activity. *Miller v. United Food,* 708 F.2d at 471.

The evidence before the district court of physical violence, destruction of property, and threats of violence, warranted the order. A Board order issued in due course would not have restored the status quo. *See Union Nacional de Trabajadores,* 219 NLRB 414 (1975), *enf'd,* 540 F.2d 1 (1st Cir.1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977) (use of 10(j) appropriate to preserve status quo). The district court's order insures that those employees who support the Union will not be restrained from exercising their rights. Indeed, the Union failed to offer any evidence as to why a

larger number of pickets, excessive noise, or violation of location limitations were necessary to convey its message. Additionally, the district court's order is similar to limitations traditionally imposed by state courts. *See, e.g., Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters,* 704 F.2d 1443, 1447 (9th Cir.1983); *National Cash Register Co. v. NLRB,* 466 F.2d 945, 955 (6th Cir.1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1442, 35 L.Ed.2d 700 (1973). In the present case, the state court order was insufficient. Mass picketing that forcibly disturbed the operation of the facility continued. Thus, a more specific order was necessary.

 Moreover, when Congress amended the NLRA in 1974 to cover health care institutions, "there was a recognized concern for the need to avoid disruption of patient care whenever possible." *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 498, 98 S.Ct. 2463, 2472, 57 L.Ed.2d 370 (1978), quoting S.Rep. No. 93–766, p. 6 (1974). Accordingly, a court may consider the special characteristics of health care institutions when determining an appropriate remedy. *Id.* at 505–06, 98 S.Ct. at 2475–76; *St. John's Hospital & School of Nursing, Inc.,* 222 NLRB 1150 (1976), *enf'd in part,* 557 F.2d 1368 (10th Cir.1977). In this case, the district court reasonably found that the elderly residents had a special need not to be awakened and harangued at all hours of the day.

Examining specifically the relief granted, the quantity and location limitations are reasonable in light of the incidents that occurred at the facility. It is clear that off-duty employees do not have an unfettered right to enter the premises to solicit support. Rather, employee solicitation on the employer's property may be limited when necessary to maintain order. *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 803–05, 65 S.Ct. 982, 987–88, 89 L.Ed. 1372 (1945). Similarly, non-employees do not have an unencumbered right to enter the premises. *Lechmere, Inc. v. NLRB,* ––– U.S. –––, –––, 112 S.Ct. 841, 849, 117 L.Ed.2d 79 (1992) (for non-employees to have access, Union must show that the location of the plant places the employees beyond the reach of union efforts to communicate). In this case, no showing of inacces-

sibility was made. Finally, the noise limitation is reasonable given the needs of the residents. This limitation does not prevent the Union from communicating its message, as only bull horns and other excessively obstreperous sounds are proscribed.

For the reasons stated, the district court's ruling was proper. At oral argument, questions arose regarding the proper procedure for revising the order. The proper course for limiting the amended order would have been and still is to file a motion with the district court. *See First National Bank of Salem v. Hirsch,* 535 F.2d 343 (6th Cir.1976). After a certain period of time, the reasons that originally justify a restraining order may change or disappear. It now has been almost one year since the original order. It would have been appropriate for the Union to bring a motion before the district court, asking that the injunction be eliminated or limited, to reflect any change in conditions. If the district court believed that a modification was proper, appellant "should then make a motion in this court for a remand of the case in order that the District Court may grant the motion for new trial." *Id.* at 345.

Accordingly, we **AFFIRM.** However, we note that the district court may re-examine the underlying issues to determine the extent to which the relief ordered is still necessary.

